IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| IRVIN SOREY JR., | : |
| Plaintiff, | : |
| v. | : Action No. 2:19-cv-250 |
| ANDREW SAUL, Commissioner of Social Security | : |
| Defendant. | : |

## REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff Irvin Sorey Jr. ("Plaintiff") Complaint, ECF No. 1, filed pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Defendant, Andrew Saul, the Commissioner of the Social Security Administration ("the Commissioner"), denying Plaintiff's claim for Disability Insurance Benefits ("DIB") under the Social Security Act ("SSA"). Plaintiff filed a Motion for Summary Judgment, ECF No. 11, and Defendant filed a Cross-Motion for Summary Judgment, ECF No. 14, which are now ready for recommended disposition. This action was referred to the undersigned United States Magistrate Judge ("the undersigned") pursuant to 28 U.S.C. §§ 636(b)(1)(B)-(C), Federal Rule of Civil Procedure 72(b), Eastern District of Virginia Local Civil Rule 72, and the April 2, 2002 Standing Order on Assignment of Certain Matters to United States Magistrate Judges. After reviewing the briefs, the undersigned makes this recommendation without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 7(J). For the following reasons, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, ECF No. 11, be **GRANTED IN PART**, that the Commissioner's Motion for Summary Judgment, ECF No. 15, be **DENIED**

1

and the final decision of the Commissioner be **VACATED** and **REMANDED** for proceedings and analysis consistent with this Report.

## I. PROCEDURAL BACKGROUND

On March 24, 2017, Plaintiff filed his application for DIB, alleging disability due to discogenic and degenerative back disorder, with an onset date of June 3, 2016. R. at 171-73.[1] His application was initially denied September 28, 2017, and denied upon reconsideration December 29, 2017. R. at 179, 181. Plaintiff requested a hearing before an administrative law judge, which was conducted on December 3, 2018. R. at 37. The administrative law judge, Judge Carol Matula ("the ALJ") issued a decision denying Plaintiff's DBI application on January 15, 2019. R. at 14-25. On March 8, 2019, the Appeals Council denied Plaintiff's request for review because the ALJ's decision was supported by substantial evidence and Plaintiff's claims did not warrant review, making the ALJ's decision the Commissioner's final decision. R. at 1-3.

Having exhausted his administrative remedies, Plaintiff filed the instant complaint for judicial review of the Commissioner's decision on May 13, 2019. ECF No. 1. The Commissioner filed an Answer on July 26, 2019. ECF No. 5. The matter was referred to the undersigned U.S. Magistrate Judge on July 30, 2019. ECF No. 7. Plaintiff filed his Motion for Summary Judgment and a memorandum in support on September 6, 2019, ECF Nos. 11-13, and the Commissioner filed a Cross-Motion for Summary Judgment and a memorandum in support on October 7, 2019, ECF Nos. 14-15. The motions are now ripe for recommended disposition.

## II. RELEVANT FACTUAL BACKGROUND

Plaintiff's initial disability application alleged his physical disability onset date was June 3, 2017, caused by cervical and lumbar spine disease. R. 171-72. In August of 2015, Plaintiff was

---

[1] "R." refers to the certified administrative record that was filed under seal on July 26, 2019, ECF No. 6, pursuant to Local Civil Rules 5(B) and 7(C)(1).

involved in a motor vehicle accident that aggravated underlying degenerative disc disease in his spine. R. at 382-83. After the accident, Plaintiff was taken in an ambulance to Sentara Leigh Hospital, where he had an X-ray taken of his lumbar spine. R. at 383. The X-rays revealed that there was mild disc space narrowing and spurring at all levels of the lumbar spine with endplate sclerosis at L2-L3 and L3-L4. Additionally, there was mild facet joint sclerosis bilaterally at L5-S1. R. at 383. The Plaintiff was referred to a physical therapist and initially evaluated on July 5, 2017. R. at 357. Over time with the help of physical therapy, his neck improved. R. at 357. The physical therapist concluded that Plaintiff had lumbar derangement with a possible additional facet joint problem or sacroiliac joint problem. R. at 357. However, his lumbar spine did not improve, and Plaintiff was sent to Dr. Gershon for pain management. R. at 357.

Plaintiff returned to Sentara Leigh Hospital on April 13, 2017, presenting with continued lumbar spine pain. R. at 376-77. During the evaluation, he was found to have a normal gait but bilateral lumbar paraspinal pain. To help treat his symptoms, doctors prescribed Norco 5 and Flexeril. R. at 377. On July 7, 2017, Plaintiff established care with a primary care doctor, Simin Vakily. R. at 496. During the examination, Plaintiff explained that he felt fine except for occasional back pain. R. at 496.

However, on October 22, 2017, Plaintiff returned to the emergency room experiencing pain in his lumbar spine. R. at 403. He was seen at Sentara Leigh Hospital after experiencing a pop when he rose from a chair four days prior. R. at 403. Plaintiff sought treatment when he continued to experience pain while moving to stand or sit, as well as increased pain with bending and twisting movements. R. at 404. His other symptoms included numbness and tingling in both legs while standing and increased pain while walking. R. at 404. After a lumbar spine X-ray, Plaintiff was diagnosed with radicular irritation in addition to moderate-severe multilevel degenerative disc

disease. R. at 403-04. Doctors prescribed prednisone and NORCO 5 to help with symptoms. R. at 404. On November 1, 2017, Plaintiff saw Dr. Simin Vakily as a follow-up from his emergency room visit. R. at 492. Plaintiff reported he was feeling better. R. at 492

On February 1, 2018, Plaintiff returned to Dr. Simin Vakily to seek treatment for tingling and pain in his left arm, hand and fingers. R. at 488. He was also experienced shooting pain in his right arm. R. at 488. Plaintiff's neck examination was normal and showed no clubbing, syanosis, or edema. R. at 489. However, Dr. Vakily did diagnose Plaintiff with radiculopathy due to degenerative disc disease of the cervical spine and referred him to a neurologist and orthopedist to seek further treatment. R. at 490.

Plaintiff followed up with neurologist, Dr. Soham Sheth, on March 26, 2018 for examination and treatment of left upper extremity pain that had been present for a few months. R. at 512. Plaintiff explained that he had been experiencing pain in his shoulder, forearm, and hand. R. at 512. He also complained of lower back pain. R. at 512. Upon evaluation, Dr. Sheth found weakness in Plaintiff's left hand intrinsic muscles and diagnosed left ulnar neuropathy with possible cervical radiculopathy. Additionally, Plaintiff was diagnosed with possible degenerative changes, possible radiculopathy, and mild idiopathic neuropathy. R. at 514.

Plaintiff had a MRI preformed on April 3, 2018, which revealed mild to moderate desiccation for all discs. R. at 522. There was also evidence of disc space narrowing at C4-C5, C5-C6, and C6-C7, with endplate degenerative marrow changes. R. at 522. At C3-C4 there was broad-based disc osteophyte complex asymmetric to the right with small right lateral protrusion. *Id.* Foraminal encroachment was revealed, with moderate right foraminal narrowing; left foramen was patent. *Id.* At C4-C5 there was broad-based disc osteophyte complex with foraminal encroachment in conjunction with uncovertebral joint hypertrophy resulting in mild bilateral

4

foraminal narrowing. *Id.* At C5-C6 there was disc osteophyte complex asymmetric to the right with flattening of the thecal sac anteriorly without cord contact or deformity. R. at 523. There was mild to moderate right foraminal narrowing. *Id.* At C7-T1, there was disc osteophyte complex with left lateral and foraminal disc protrusion, and there was contact upon the exiting left nerve root. *Id.*

Plaintiff underwent an EMG test on April 12, 2018 which revealed evidence of chronic denervation with reinnervation changes in the left L5-S1 innervated muscles suggestive of L5-S1 radiculopathy. R. at 517-18. There was also evidence suggestive of chronic denervation with reinenrvation changes in left triceps suggestive of left C7 radiculopathy. *Id.* Additionally, there was evidence suggestive of predominantly sensory axonal peripheral neuropathy. *Id.* However, the needle EMG in the left upper extremity was limited because the patient was not able to tolerate the test. *Id.*

On August 28, 2018, Plaintiff returned to Dr. Sheth, who noted no improvement in Plaintiff's condition, even post cervical epidural injection. R. at 550, 504. Plaintiff then elected to have an anterior cervical discectomy fusion at C7-T1 on October 23, 2018. R. at 716, 728-730. When discharged, Plaintiff was informed he could resume normal activity, except strenuous movements that might place stress on the incision. R. at 661. At the December 3, 2018 hearing before the ALJ, however, Plaintiff reported that he was still in pain and might require additional procedures in the future. R. at 48. His prognosis was uncertain because of the continued pain. R. at 48.

### III. THE ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

A sequential evaluation of a claimant's work and medical history is required in order to determine if the claimant is eligible for benefits. 20 C.F.R. §§ 404.1520, 416.920; *Mastro v. Apfel,*

270 F.3d 171, 177 (4th Cir. 2001). The ALJ conducts a five-step sequential analysis for the Acting Commissioner, and it is this process that the Court examines on judicial review to determine whether the correct legal standards were applied and whether the resulting final decision of the Acting Commissioner is supported by substantial evidence in the record. *Id.* The ALJ must determine if:

> (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.

*Strong v. Astrue*, No. 8:10-cv-357-CMC-JDA, 2011 WL 2938084, at *3 (D.S.C. June 27, 2011) (citing 20 C.F.R. §§ 404.1520, 416.920); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (noting that substantial gainful activity is "work activity performed for pay or profit."); *Underwood v. Ribicoff*, 298 F.2d 850, 851 (4th Cir. 1962) (noting that there are four elements of proof to make a finding of whether a claimant is able to engage in substantial gainful activity)). "An affirmative answer to question one, or negative answers to questions two or four, result in a determination of no disability. Affirmative answers to questions three or five establish disability." *Jackson v. Colvin*, No. 2:13cv357, 2014 WL 2859149, at *10 (E.D. Va. June 23, 2014) (citing 20 C.F.R. § 404.1520). Under this sequential analysis, the ALJ made the following findings of fact and conclusions of law.

First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 3, 2016, the alleged onset date. R. at 19. Second, the ALJ found that Plaintiff's C7-T1 left disc protrusion; left C7 radiculopathy; facet arthrosis L5-S1; and degenerative disc disease of the lumbar spine qualifed as severe impairments under 20 C.F.R § 404.1520(c) because they significantly limited the Plaintiff's ability to perform basic work activities. R. at 20. Additionally,

the ALJ found that Plaintiff's medically determinable impairments, including but not limited to hyperlipidemia, hepatic steatosis, renal cysts, left gland nodule, left L5-S1 radiculopathy and sensory neuropathy, were non-severe because they were responsive to medication, did not require any significant medical treatment, or did not result in any continuous exertional or nonexertional functional limitations. R. at 19. Furthermore, the ALJ found that Plaintiff's alleged conditions of malaise and fatigue were not medically determinable, or alternatively, non-severe because his review of systems had been negative for fatigue and there was no evidence of chronic fatigue syndrome. R. at 19-20.

Third, the ALJ determined that the evidence failed to show that Plaintiff had an impairment or combination of impairments that met or medically equaled one of the listed impairments set forth in 20 C.F.R. 404.1520(d), 404.1525, and 404.1526. R. at 20. With respect to Plaintiff's back disorders, the ALJ applied the "Paragraph A" criteria set forth in Listing 1.04(A), which requires that all of the medical criteria designated in that paragraph be present within a twelve-month period. R. at 20. The ALJ found that although Plaintiff did have disorder of the lumbar back with radiculopathy, the record did not contain evidence of positive straight leg testing, sitting and supine. R. at 20. In regard to Plaintiff's cervical spine disorder, the ALJ determined that the record did not support that the disorder caused, or was expected to continue to cause, nerve root compression continuously for at least twelve months. R. at 20. Exams revealed that the Plaintiff had intact and normal motor and sensory function. R. at 20. There were no objective findings regarding Plaintiff's motor and sensory functions for the period after the cervical fusion in October of 2018. R. at 20. The ALJ specifically found that aside from the Plaintiff's subjective reports, there was no indication that he would not be able to perform light work within twelve months of his neck surgery. R. at 23.

The ALJ then determined that the Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b). R. at 21. Light work includes the occasional climbing of ladders, ropes, and scaffolds, as well as stooping, kneeling, crouching, and crawling. R. at 21. Plaintiff had reported that he could perform personal care, prepare his own meals, complete some household care, go outside daily, go out alone and drive, shop in stores and spend time with others. R. at 23. Additionally, Plaintiff did not require the assistance of any ambulatory device or orthotic device. R. at 23. Plaintiff's RFC capacity was also supported by the findings of state agency medical consultants. R. at 23.

Fourth, the ALJ determined that Plaintiff would not able to perform past relevant work as a diesel mechanic because such positions exceeded the demands of the Plaintiff's established RFC. R. at 23-24. The ALJ found that Plaintiff had acquired work skills from past relevant work including reports and records, repair and maintenance of diesel engines, heavy equipment operation, diagnosing problems, assembly and disassembly, reconditioning parts, knowledge of tools and equipment related to diesel mechanic field, and problem resolution. R. at 24. As such, the ALJ found that the Plaintiff could complete other work. R. at 24.

Finally, the ALJ found that work existed in significant numbers in the national economy for Plaintiff based on his age, limited education, ability to speak English, work experience, and his residual functional capacity. R. at 24. Such available jobs included power equipment mechanic, automotive technician, and diesel plant operator. R. at 25.

## IV. STANDARD OF REVIEW

Under the Social Security Act, the Court's review of the Commissioner's final decision is limited to determining whether the decision was supported by substantial evidence in the record and whether the correct legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

In determining whether the Commissioner's decision is supported by substantial evidence, the Court does not "re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [Commissioner]." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). If "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for the decision falls on the [Commissioner] (or the [Commissioner's] delegate, the ALJ)." *Id.* (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). "Even if substantial evidence supports the Commissioner's factual findings in support of a benefit denial, a district court may reverse if the ALJ committed errors of law." *Hancock v. Barnhart*, 206 F. Supp. 2d 757, 764 (W.D. Va. 2002). Accordingly, if the Commissioner's denial of benefits is supported by substantial evidence and applies the correct legal standard, the Court must affirm the Commissioner's final decision. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

## V. ANALYSIS

In his summary judgment motion, Plaintiff raises a single issue: whether the ALJ employed an improper legal standard when evaluating the durational requirement for Social Security benefits. Specifically, Plaintiff argues that the ALJ did not consider whether Plaintiff's

9

combination of impairments could be expected to last for a continuous twelve-month period, taking into consideration the time period both before and after the Plaintiff's surgery. Under the Social Security Act, a disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). The Commissioner posited that the ALJ's decision was supported by substantial evidence, and that there was no evidence that Plaintiff was disabled during the period of time before his surgery, so the ALJ correctly considered whether he was expected to be disabled for the twelve-month period following surgery.

Here, the ALJ determined that Plaintiff had the RFC "to perform light work with occasional climbing of ladders/ropes/scaffolds, stooping, kneeling, crouching, and crawling." R. at 21. In so determining, the ALJ found that Plaintiff had no significant issues with respect to the cervical spine before 2018, and that even in spite of Plaintiff's cervical surgery in October 2018, "[b]esides the [Plaintiff's] subjective complaints, there is no indication that he will not be able to perform light work within 12 months of his neck surgery." R. at 23. While the Commissioner contends that "there is no evidence supporting that Plaintiff's pre-surgery cervical pain was disabling," ECF No. 15 at 14, Plaintiff argues that the ALJ did not make this finding, ECF No. 18 at 3. Instead, Plaintiff points out that the ALJ only found that Plaintiff had no evidence of cervical problems *before 2018*, and that there was no indication that he would not be able to perform light work within twelve months of his October 2018 neck surgery, thereby disregarding any potential disability stemming from Plaintiff's cervical condition in the months in 2018 leading up to the October 2018 surgery. *Id.* In other words, although the ALJ found and considered Plaintiff's alleged disability could not be expected to last twelve months from the date of his surgery, she did not consider whether the

Plaintiff's alleged disability could have covered a time period that began in 2018 *before* the October 2018 surgery and *could be expected* to last for a period of time following the surgery for a total of twelve months. The Court agrees.

Plaintiff first sought treatment for his cervical symptoms from his primary care physician on February 1, 2018. R. at 499-490. Plaintiff continued treatment (*see supra* section II), and ultimately required surgery which took place on October 23, 2018. R. at 729-730. At the hearing on December 3, 2018, Plaintiff testified that: (1) he will have to wear a cervical collar for six months, and additionally wears another type of soft collar (R. at 48-49); (2) he cannot lift and carry anything now (R. at 57-58); (3) he cannot stoop or squat (R. at 58); and (4) his doctors are unsure if his problems with his fingers would resolve in time (R. at 48). If, at the latest[2], Plaintiff's impairments related to his cervical spine began in February 2018, the ALJ did not evaluate whether Plaintiff's impairments would continue up to or after February 2019 to constitute an impairment that *could be expected* to last twelve months. Instead, the ALJ reasoned that there was no indication that Plaintiff could not work *within* twelve months of his neck surgery. R. at 23. While the Commissioner argues that "there is no evidence supporting that Plaintiff's pre-surgery cervical pain was disabling," ECF No. 15 at 14, the ALJ did not make this finding, and her decision can only be affirmed upon the reasons she gave, not upon the Commissioner's additional argument. *Patterson v. Bowen*, 839 F.2d 221, 225 n.1 (4th Cir. 1988). Her reasoning failed to address the proper legal standard of 42 U.S.C. § 1382c(a)(3)(A), which required considering a potential twelve-month period of disability that covered the time both before and after the surgery. Because she did not do so, the Court cannot find that the ALJ's RFC determination was supported by substantial evidence, in light of the failure to determine whether Plaintiff had a disability that could

---

[2] Plaintiff contends that although he was first seen for his cervical symptoms in February 2018, he reported at that appointment that his symptoms had begun some months prior. ECF No. 13 at 11.

11

have been expected to last twelve months. The matter therefore should be remanded back to the Commissioner in order to make this determination.

## VI. RECOMMENDATION

For these reasons, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, ECF No. 11, be **GRANTED**, that the Commissioner's Motion for Summary Judgment, ECF No. 14, be **DENIED**, and the final decision of the Commissioner be **VACATED** and **REMANDED** for proceedings and analysis consistent with this Report.

## VIII. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of this Court specific written objections to the above findings and recommendations within fourteen (14) days from the date this Report and Recommendation is mailed to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to all counsel of record.

/s/ Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
July 1, 2020

13